UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY MARIE RUSSO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-1957-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 15, 16. For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I. <u>Background</u>

Plaintiff filed an application for SSI, alleging that she had been disabled since November 15, 2012. Administrative Record ("AR") at 167-72. Her application was denied initially and upon reconsideration. *Id.* at 90-95, 99-105. On September 23, 2016, a hearing was held before Administrative Law Judge ("ALJ") Plauche F. Villere, Jr., at which plaintiff testified and was represented by counsel. *Id*. at 34-61. On January 26, 2017, the ALJ issued a decision finding that

1

plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1]  *Id.* at 19-29.  The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since August 20, 2014, the application date (20 CFR 416.971 *et seq*.).

\* \* \*

2. The claimant has the following severe impairments: left medial epicondylitis, cubital tunnel syndrome, osteoarthritis, carpal tunnel syndrome, De Quervian's tenosynovitis, and [sic] ulnar neuropathy; and asthma (20 CFR 416.920(c)).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

   \* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except left upper extremity limited to ten pounds occasionally and five pounds frequently, plus fingering, handling, and feeling limited to frequently, avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.).

   \* \* \*

5. The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

   \* \* \*

6. The claimant has not been under a disability, as defined by the Social Security Act, since August 20, 2014, the date the application was filed (20 CFR 416.920(f)).

*Id.* at 21-28.

Plaintiff's request for Appeals Council review was denied on July 31, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II. <u>Legal Standards</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff sole argument is that the ALJ erred in determining that she was capable of performing her past relevant work as a cashier. ECF No. 15-2 at 3-6.

At the fourth step of the sequential evaluation process, the ALJ must determine whether plaintiff can perform any of her past relevant work. 20 C.F.R. § 416.920(e). "Past relevant work" is work that a claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b). In assessing whether work was substantial gainful activity, the primary consideration is the earnings received from the work activity. 20 C.F.R. § 416.974(a)(1). Although the claimant has the burden of showing that she cannot perform her past relevant work, the ALJ is still required to make the requisite factual finding to support his step-four conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

At step four of the sequential evaluation, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work as a cashier. AR 28. That finding was based upon plaintiff's descriptions provided in a work history report, and a vocational expert's response to an interrogatory. *Id*. As part of her disability application, plaintiff filled out a work history report, which is a questionnaire about previous jobs.[2] She stated in that report that she worked for Pier One from July 2012 to October 2012. *Id*. at 204. She indicated that she worked 37.5 hours a week and was paid $10.50 per hour while in that job. *Id*. at 205. She also indicated that she was employed by One Halloween Night from August 2010 to November 2010, where she worked 48 hours a week and earned $9.00 per hour. *Id*. at 204, 206.

---

[2] There is no indication in the record that plaintiff referred to pay stubs, tax records or other employment records when she filled out the questionnaire.

4

Apart from the information in the work history questionnaire, the ALJ obtained responses to an interrogatory from a vocational expert who categorized plaintiff's two jobs as cashier positions. *Id*. at 264; *see* Dictionary of Occupational Titles, No. 211.462-010. The vocational expert further opined that an individual with plaintiff's RFC maintained the ability to work as a cashier. AR 265. From this evidence, the ALJ concluded that plaintiff's work for Pier One and One Halloween Night constituted past relevant work because: they were performed within the last 15 years, employment at both companies lasted long enough for plaintiff to learn how to perform the jobs, and--significantly--plaintiff's earnings from these jobs exceeded the threshold for substantial gainful activity. *Id*. at 28. The latter conclusion, that the earnings for these jobs met the threshold for constituting substantial gainful work activity, was material to the finding that plaintiff is not disabled.[3]

With respect to plaintiff's earnings, the ALJ stated that:

> [T]he claimant reported earning $9.00 per hour and working 48 hours per week at One Halloween Night, which calculates to $1,872 per month, and earning $10.50 per hour for 37.5 hours per week at Pier One, which calculates to $1,706 per month, both of which exceed the threshold for substantial gainful activity.

*Id*. Plaintiff argues that the ALJ erred in finding that her earnings were sufficient to satisfy the substantial gainful activity requirement. Plaintiff points to the Social Security Administration's ("SSA") official record of her earnings. That record shows that for the reporting year 2010, the total wages reported for plaintiff from her employment with One Halloween Night was only $1,557.10. For the reporting year 2012, the total wages reported for plaintiff from her employment with Pier One was $1,880.97. *Id*. at 5-6; *see* AR 173, 175. Based on those figures and plaintiff's answers in the work history questionnaire, which reflects that each job lasted approximately four months, plaintiff claims that her average monthly salary was only $389.28 from One Halloween Night, and only $470.24 from Pier One. Thus, plaintiff contends that her earnings for both positions were below the threshold for substantial gainful activity. *Id*. at 15-2 at

---

[3] Plaintiff does not dispute that the two jobs were performed within the past 15 years, nor does she challenge the ALJ's finding that both jobs lasted long enough for her to learn how to perform their vocational requirements. ECF No. 15-2 at 4.

5

4-6; *see* POMS § DI 10501.15(B) (monthly earning requirement for substantial gainful activity was $1,000 in 2010 and $1,010 for 2012). If she is correct, the finding that she is not disabled based upon a functional capacity to perform her past relevant work was erroneous. 20 C.F.R. § 416.960(b).

The Commissioner argues that the ALJ was permitted to rely "on statements made by Plaintiff in her Work History Report even though the statements were inconsistent with the IRS earning records" obtained by the SSA. ECF No. 16 at 10-11. She contends that because the information in plaintiff's work history reflects monthly earnings exceeding $1,500, which is above the threshold for substantial gainful activity, the ALJ properly concluded that both jobs were past relevant work. *Id*. 9-12.

There is a clear discrepancy between the earnings provided by plaintiff in her work history report and those documented in SSA's official Earnings Record for plaintiff. Plaintiff's responses to the work history questionnaire indicate that her employment with Pier One entailed working 37.5 hours a week at $10.50 an hour, which is approximately $1,700 a month. AR 205. She also states that she worked 48 hours a week at $9.00 an hour during her employment with One Halloween Night, which equates to approximately $1,850 in average monthly earnings. *Id*. at 206. Although she indicated that she worked both jobs for approximately four months (*id*. at 205-06), the official and detailed SSA Earnings Record for plaintiff show that her *total* reported wages were $1,880.97 from Pier One and $1,557 from One Halloween Night (*id*. at 175). Thus, the official wage information obtained by the SSA from tax filings indicates that the earnings from both jobs were well below the threshold for substantial gainful activity. *See* 20 CFR § 416.974(b); *see also* POMS § DI 10501.15(B). But the ALJ, in concluding otherwise, does not mention the official earnings record. Instead, his decision relies entirely on plaintiff's answers in the work history questionnaire in assessing her past relevant work.

The Commissioner argues that "Plaintiff offers no explanation why her statements in her Work History Report are inaccurate . . . ." ECF No. 16 at 11. But plaintiff offers a compelling explanation why. The SSA's official record of plaintiff's earnings show that the responses
/////

6

provided in the questionnaire, completed in November 2014,[4] are inaccurate. Why a claimant's recollection in November of 2014 should be credited as more reliable than the official FICA wages reported by her employers, submitted at or near the time of her employment in 2010 and 2012, is the more relevant question. Particularly when the Commissioner's regulations provide that the SSA Earning Record is conclusive absent limited circumstances not present in this record. 20 C.F.R § 404.803(c).

The approach argued by the Commissioner suggests that this regulation can be ignored in this context. It also suggests that in resolving the discrepancy between SSA's official Earnings Record[5] (which is based on an employer's quarterly report and payment of FICA taxes) and the plaintiff's subsequent estimates years later in the work history questionnaire, the ALJ was free to ignore the procedures that must be followed to alter an official Earning Record. The regulations at 20 C.F.R. Part 404, Subpart I, provide a comprehensive scheme governing the content of an Earnings Record and the procedures that are to be followed for making any change to that record.

The Earnings Record is an official record used by the Social Security Administration in making fundamental determinations as to an individual's insured status and eligibility for benefits. Here, the record available to the Commissioner was not dependent upon plaintiff's ability to remember details that would be found in a pay stub or an employer's quarterly report of wages and FICA contribution. "The Commissioner tracks the social security earnings record of a wage-earner by taxes paid by the employer . . . ." *Chapman v. Apfel*, 236 F.3d 480, 481-82 (9th Cir. 2000). The crucial point here is that the official Earnings Record ultimately becomes conclusive evidence of wages in a given calendar quarter because of a comprehensive and generally reliable scheme for collecting the data in a manner designed to assure accuracy. The procedures for changing the Earnings Record exist for the obvious reason that the Earnings

---

[4] The completed form is undated. However, the Commissioner's index of the Administrative Transcript describes the exhibit as "Work History Report, dated 11/13/2014, from Claimant." ECF No 11-7 at 1.

[5] "Earning Record" is defined at 20 C.F.R. § 404.802. The regulations at 20 C.F.R. Part 404, Subpart I, provide a comprehensive scheme governing the content of an Earnings Record and the procedures that are to be followed for making any change to that record.

7

Record must be accurate to assure that decisions about insured status, entitlement and payment amount are based on correct information. Casually taking a claimant's estimates from memory some years later as a basis for disregarding SSA's official record of her earnings appears to be at cross purposes with the regulations as to the conclusiveness of that record and the procedures that must be followed to alter it.

The approach argued by the Commissioner is problematic for the additional, and more fundamental reason that the ALJ is required to resolve inconstancies and ambiguities in the record. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence."). The ALJ did not even acknowledge the discrepancy, much less resolve the conflict between the work history report and the earnings record. Furthermore, the SSA's Earnings Report is probative evidence bearing directly on the amount of plaintiff's wages. *See* 20 C.F.R. § 404.803(a) ("SSA records are evidence of the amounts of your earnings and the periods in which they were received."). The ALJ was not permitted to disregard such evidence without explanation. *See Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (An ALJ "may not reject 'significant probative evidence' without explanation.").

There is also no basis in the record for finding that plaintiff's own recollection of her past earnings is more accurate than the contemporaneous information her employers submitted to the IRS. Plaintiff's work history report was submitted in November 2014, more than two years after she concluded her employment with Pier One and four years after she ceased working for One Halloween Night. AR 204. Furthermore, that report specifically states that plaintiff could provide estimates of the hours worked and the rate of pay. *Id*. at 205-06. Thus, the report the ALJ relied upon does not purport to contain precise earnings information. Rather, it is apparent from the report itself that it contains estimates from memory rather than data obtained from accurate records. In contrast, there is nothing in the record, aside from plaintiff's estimates, suggesting that the information reported by her employers to the IRS and contained in the SSA's official Earnings Record for plaintiff was inaccurate.

8

At the very least, the discrepancy between the two documents creates ambiguity regarding plaintiff's earnings. The ALJ was therefore required to further develop the record. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (An ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered."); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (the ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see also Taylor ex rel. Spriggs v. Astrue*, 2012 WL 6863916, at *10-11 (D. S.C. Nov. 30, 2012) (finding that the ALJ failed to satisfy his duty to fully develop the record where there was a conflict between earnings described in the claimant's work history report and earnings report); *Dicus v. Sullivan*, 1990 WL 264706, at *8 (E.D. Wash. Feb. 19, 1990) (finding that "the ALJ should have obtained additional information from neutral sources such as [the claimant's] employer" where there was conflicting evidence concerning whether a job was substantial gainful activity); *cf. Killian v. Callahan*, 1998 WL 159915, at *7 (D. Kan. Mar. 16, 1998) (holding that the ALJ erred in relying on plaintiff's work history to conclude he last worked in 1992 when the record as a whole demonstrated plaintiff last worked in May 1991).[6]

/////

/////

---

[6] The Commissioner cites to two district court decisions holding that an ALJ may rely on statements in a work history report even where they conflict with other evidence in the record. ECF No. 16 at 10-11; *see Lunz v. Berryhill*, 2017 WL 6210315, at *11 (D. Ala. Feb. 14, 2017) ("The ALJ cited to Mr. Lunz's own testimony, his self-reported work history reports, and a summary of his annual income for the years that he worked as a food demonstrator. Although Mr. Lunz has pointed to other evidence in the record that might support a different conclusion, '[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld.'"); *Bennetts v. Astrue*, 2011 WL 5024993, at *11 (D. Or. Oct. 20, 2011) ("Bennetts argues that her Social Security earnings records, based on income she reported to the IRS on form W-2, do not show earnings amounting to substantial gainful activity in the two occupations described on her work history report. Bennetts offers no explanation why her own work history report would be inaccurate . . . . Because the ALJ could reasonably rely on Bennetts's description of her past work and earnings, Bennetts has not satisfied her burden of proving she did not have income from her counseling jobs that exceeded the level that shows substantial gainful activity."). This court finds neither decision persuasive here, where the Commissioner clearly had in the claims record an official Earnings Record of the wages actually reported by the employers.

Accordingly, the ALJ erred by failing to resolve the conflict in evidence regarding plaintiff's earnings and fully develop the record on this issue. Therefore, the matter must be remanded for further consideration.

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is denied;
3. The matter is remanded for further proceedings consistent with this order; and
4. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: March 20, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE